Roy W. ABBOTT, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 91–SC–368–MR.

Supreme Court of Kentucky.

Jan. 16, 1992.

Allen Button, Louisville, for appellant.

Chris Gorman, Atty. Gen., Todd D. Ferguson, Asst. Atty. Gen., Criminal Appellate Div., Frankfort, for appellee.

SPAIN, Justice.

On October 15, 1990, the McCracken County Grand Jury returned a two-count indictment against the appellant, Roy W. Abbott. The first count of the indictment stated that:

> On or about the 16th day of September, 1990, in McCracken County, Kentucky, the above named Defendant [Abbott] committed First–Degree Assault upon Harlan Parrish by shooting him with a gun, against the peace and dignity of the Commonwealth of Kentucky.

The second count of the indictment further stated that:

> On or about the 16th of September, 1990, in McCracken County, Kentucky the above named Defendant [Abbott], committed the offense of First–Degree Wanton Endangerment by endangering the life of Rhonda G. Duncan by firing a gun at her, against the peace and dignity of the Commonwealth of Kentucky.

Appellant was convicted by a jury of both offenses on March 5, 1991. The following day, after the punishment phase, the jury recommended sentences of twenty and five years, respectively. The trial court subsequently ordered the sentences to be run concurrently, pursuant to the jury's recommendation.

Appellant claims two assignments of error on his direct appeal. Prior to discussing the merits of the case, we must first point out that the appellant has failed, in his Brief, to make a "statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner." CR 76.-12(4)(c)(iv). However, of our own volition, we have searched the record and found that both issues raised by the appellant are preserved.

Appellant first argues that he was prejudiced when the trial court denied his motion for a continuance on the morning of trial. In November 1990, his trial counsel had filed a combined pretrial motion for discovery and for a bill of particulars. The trial court granted both motions and ordered the Commonwealth to file a bill of particulars stating the time and place of the offenses alleged in the indictment and factual statements of the essential elements of the alleged offense. The Commonwealth failed to file a bill of particulars but appellant did not raise the matter until he filed a motion for a continuance on the day of trial. In response, the Commonwealth, though admitting the oversight, stated that it had provided open file discovery throughout the case and that the appellant understood that the Commonwealth would attempt to show that appellant's conduct was intentional. The trial court impliedly denied the appellant's motion for a continuance by proceeding with the trial.

RCr 9.04 states that the decision concerning the grant or denial of a motion for a continuance lies within the sound discretion of the trial court. The appellant must show "sufficient cause" before the trial court will grant the motion. RCr 9.04. A reviewing court will not reverse a criminal conviction unless it is found that the trial court abused its discretion in the denial of a motion for a continuance. *Davidson v. Commonwealth*, Ky., 555 S.W.2d 269, 271 (1977); *Stump v. Commonwealth*, Ky.App., 747 S.W.2d 607, 609 (1988).

The trial court here did not abuse its discretion when it denied the appellant's motion for a continuance. The Commonwealth had provided the appellant with full discovery of the case which it was going to prove at trial. Defense counsel knew that

the Commonwealth was alleging first-degree assault from a clear reading of the indictment. We likewise note that defense counsel made a motion *in limine* to prevent two prospective witnesses from testifying that the appellant's intent in committing the crimes found in the indictment was to molest or rape Ms. Duncan (the victim named in Count Two of the indictment). From these circumstances, it is easy to find that the appellant had full knowledge of the fact that the Commonwealth would attempt to prove at trial that the appellant's conduct was intentional. The record reveals that the Commonwealth did not attempt to prove at trial any other state of mind beyond intent, and, in fact, that is what the Commonwealth proved.

■ The function of a bill of particulars in criminal cases is to provide information fairly necessary to enable the accused to understand and prepare his defense against charges without prejudicial surprise at trial. RCr 6.22; *Brown v. Commonwealth,* Ky., 378 S.W.2d 608 (1964), overruled on other grounds, *Payne v. Commonwealth,* Ky., 656 S.W.2d 719 (1983). "Responses by way of a bill of particulars can and will be required by the court (RCr 6.22) *if the details of the crime are needed in order to prepare a defense.*" *Sussman v. Commonwealth,* Ky., 610 S.W.2d 608, 612 (1981). (Emphasis added and citation omitted.) Ever since the arraignment it was patent to the appellant and his counsel that the first charge, first-degree assault, would require proof of the element of intent. KRS 508.010. No proper justification was shown in support of the motion for continuance. There was no error in denying it. *See United States v. Burden,* 497 F.2d 385 (8th Cir.1974).

Appellant's second claimed error stems from the refusal of the trial court to take judicial notice of parole board statistics regarding results of initial parole eligibility hearings. The trial court agreed to take judicial notice of the Corrections Cabinet's parole eligibility regulations but denied the appellant's additional request. Both the Commonwealth and the appellant explained to the jury in closing arguments that parole eligibility does not mean that a prisoner automatically will be granted parole.

■ Parole eligibility statistics are not a proper subject for judicial notice. KRS 13A.090(2). Statistical information of this type is not "beyond the scope of reasonable dispute and ... susceptible to immediate and accurate determination by resort to readily accessible and indisputable sources." Lawson, THE KENTUCKY EVIDENCE LAW HANDBOOK, § 1.00 (2d ed. 1984); *See Pattie A. Clay Infirmary Association v. First Presbyterian Church of Richmond,* Ky., 551 S.W.2d 572, 574 (1977).

■ Parole eligibility statistics, moreover, are not admissible mitigating evidence, KRS 532.055(2)(b), and do not negate the Commonwealth's evidence. In contrast, evidence concerning minimum parole eligibility is expressly provided for by statute and by case law. KRS 532.-055(2)(a)(1); *Boone v. Commonwealth,* Ky., 780 S.W.2d 615 (1989).

The trial court found that "the introduction of specific figures and numbers to me opens the door to evidence that the statute was not set up for." This is a correct interpretation of KRS 532.055. The trial court did not err.

The judgment of the McCracken Circuit Court convicting the appellant of first-degree assault and first-degree wanton endangerment is affirmed.

STEPHENS, C.J., and LAMBERT, REYNOLDS and WINTERSHEIMER, JJ., concur.

LEIBSON, J., dissents by separate opinion in which COMBS, J., joins.

LEIBSON, Justice, dissenting.

Respectfully, I dissent from that portion of the Majority Opinion denying the appellant the right to contradict evidence of parole eligibility with statistical evidence bearing on the probability of release. The Majority Opinion permits evidence regarding minimum parole eligibility, which is inherently misleading and confusing as to

**420**

likelihood of release, while it prohibits evidence that would rebut these half-truths.

The Majority states:

"Under KRS 532.055(2)(a), the Commonwealth, during the sentencing hearing, may offer evidence relevant to sentencing including the minimum parole eligibility."

What possible purpose or relevance could there be in such evidence aside from influencing the jury to provide a more severe penalty as an appropriate penalty because of the probability of early release? Why should the defendant be denied the right to "negate" such evidence when KRS 532.-055(b) allows the defendant to "introduce evidence in mitigation" which negates any evidence introduced by the Commonwealth? Statistics such as those offered by Abbott fit squarely within the statute. *See Huff v. Commonwealth*, Ky., 763 S.W.2d 106, 110 (1989) (Leibson, J., dissenting).

There is no logical reason why, when a jury has been given evidence of minimum parole eligibility, the defendant may not mitigate the resulting prejudice by offering statistics showing that only a fraction of convicts are granted parole on their initial try. To hold otherwise misleads the jury into believing that inmates are frequently paroled when they first become eligible and to encourage jurors to impose harsher sentences than they would otherwise think appropriate. The statistics are as reliable as the Commonwealth's evidence because minimum parole eligibility "is inherently vague and unknowable, and subject to subsequent change." Leibson, J., in *Huff, supra* at 111. If the jury is entitled to know that a defendant may not serve the full term it imposes, surely it is also entitled to know that the vast majority of convicts are not paroled when they first become eligible. *See Huff, supra*, Appendix A, at 116, for a compilation of statistics, demonstrating that between the years 1983 and 1987 there was a significant decline in the number of convicts paroled when they first became eligible—a decline from 43.6% in 1983–84 to 30.9% in 1986–87.

These statistics were the only means available to the appellant to complete the information given by the Commonwealth, and to restore some degree of fairness and credibility to the sentencing process. The Majority Opinion shuts the door on legitimate rebuttal; it denies fundamental fairness.

COMBS, J., joins this dissent.